NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

RUSSELL LAWRENCE GARCIA, *Appellant*.

No. 1 CA-CR 16-0106
FILED 9-14-2017

Appeal from the Superior Court in Coconino County
No. S0300CR201400677
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

**B E E N E**, Judge:

**¶1**         Russell Garcia ("Garcia") appeals his conviction and sentence for sexual conduct with a minor under 12 years of age, a class 2 felony and dangerous crime against children. In light of our supreme court's recent opinion in *State v. Haskie*, 399 P.3d 657 (2017), we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**         The evidence at trial, viewed in the light most favorable to sustaining the conviction,[1] demonstrated that when the victim was nine years old, Garcia, who lived with the family, offered her one dollar if she would follow him to an upstairs bedroom. She testified that after they reached the bedroom, Garcia asked her if she knew what "d−k" meant, and then lay her on the bed, pulled down her pants and underwear, and licked her private parts. Afterward, Garcia gave her one dollar and told her not to tell anyone. She testified that Garcia had given her money before, but this was the first and only time that he had touched her inappropriately.

**¶3**         Immediately afterward, the victim tried to call her mother at work, but was unable to reach her. When her mother arrived home, the victim told her what happened. Her mother took the victim to a hospital emergency room, and she was sent across the street to the Safe Child Center, where she was examined by a sexual assault nurse examiner. A swab of the victim's mons pubis, showed a Y-STR profile that matched Garcia and all his paternally-related male relatives. The amount of DNA present on the swab was indicative of saliva.

**¶4**         The jury convicted Garcia of the charged offense of sexual conduct with a minor, and found that the victim was under 12 years of age. The court sentenced Garcia to life in prison without the possibility of release until after he served 35 years. Garcia filed a timely notice of appeal. We

---

[1]       *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A) (2017).[2]

## DISCUSSION

### I.      Asserted Improper Profiling

**¶5**      Garcia argues the superior court erred by admitting Dr. Wendy Dutton's expert testimony as a "blind" or "cold" expert on typical perpetrator characteristics exhibited during the grooming, victimization, and concealment stages of child sexual abuse.  He contends Dr. Dutton's testimony constituted impermissible offender profiling.

**¶6**      Garcia did not object to Dr. Dutton's testimony at trial, but argues we should review for harmless error because he filed a pretrial motion to preclude her testimony as a cold expert on the behavioral patterns and conduct of child sexual abuse victims.  We disagree.

**¶7**      Garcia filed a motion in limine to preclude Dr. Dutton's testimony under Arizona Rules of Evidence ("Rule") 401, 403, and 702(a)-(d).[3]  His motion did not argue that Dr. Dutton's testimony might include improper offender profiling.  After an evidentiary hearing, the court ruled Dr. Dutton would be allowed to testify on the behavioral patterns and conduct of child sexual assault victims, concluding the testimony would be more probative than prejudicial under Rule 403.  As noted, Garcia did not object at trial to any of the testimony that he now argues constituted improper profiling.  On cross-examination of Dr. Dutton, Garcia in fact elicited testimony clarifying her testimony on a typical perpetrator's selection of victim, engagement, grooming, assault, and concealment, apparently in an attempt to highlight distinctions between the usual circumstances that Dr. Dutton described, and the circumstances in this case.

**¶8**      Because Garcia failed to object to Dr. Dutton's testimony on the ground he urges on appeal, we review his claim of error for fundamental error only.  *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005); *State v. Bolton*, 182 Ariz. 290, 304 (1995) (holding that an objection on one ground does not preserve an issue on another ground).  On fundamental error review, the defendant has the burden of proving that the

---

[2]      Absent material revision after the date of an alleged offense, we cite a statute's current version.

[3]      On appeal, Garcia does not challenge Dr. Dutton's testimony on the behavioral patterns and conduct of sexual abuse victims.

court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Henderson*, 210 Ariz. at 567, ¶ 20. Because we find no error, much less fundamental error, Garcia has failed to meet his burden.

¶9         As stated above, Garcia contends that Dr. Dutton's testimony was impermissible offender profiling. Profile evidence is evidence that "tends to show that a defendant possesses one or more of an informal compilation of characteristics or an abstract of characteristics typically displayed by persons engaged in a particular kind of activity." *State v. Ketchner*, 236 Ariz. 262, 264, ¶ 15 (2014) (citations and internal quotations omitted). "Although there may be legitimate uses for profile evidence . . . profile evidence may not be used as substantive proof of guilt because of the risk that a defendant will be convicted not for what he did but for what others are doing." *Id.* at 264-65, ¶ 15 (citations and internal quotations omitted).

¶10        In *Ketchner*, our supreme court held that the testimony of a domestic violence expert on separation violence, lethality factors, and characteristics common to domestic abusers was improper profile evidence, because "[t]here was no reason to elicit this testimony except to invite the jury to find that Ketchner's character matched that of a domestic abuser who intended to kill or otherwise harm his partner in reaction to a loss of control over the relationship." 236 Ariz. at 265, ¶ 19. Although offender profiling is not allowed, "cold" experts are allowed to testify about the general characteristics of victims of sex offenses. *State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 15 (2014) ("expert testimony about general behavior patterns of child sexual-abuse victims is permitted when helpful for a jury to understand the evidence"); *see also Haskie*, 399 P.3d at ___, ¶ 12 (noting that in cases involving child victims, "admission of 'cold' expert testimony that educates the fact-finder about general principles without applying those principles to the particular facts of the case" is admissible).

¶11        Whether expert testimony constitutes impermissible offender profiling is necessarily a fact-intensive inquiry into the purpose of the specific testimony. In general, expert testimony that focuses the jury on whether the evidence against a defendant matches the evidence in the usual case will constitute impermissible profile evidence. *See Ketchner*, 236 Ariz. at 265, ¶ 18 (citing other jurisdictions holding it was reversible error to admit testimony of a "cold" expert in child sexual abuse cases which tended to focus jury's attention upon whether evidence against defendant matched evidence in usual case or was offered as substantive evidence of defendant's guilt).

¶12            "Although expert testimony about victim behavior that also describes or refers to a perpetrator's characteristics has the potential to be 'profile' evidence, it is not categorically inadmissible.   Rather, its admissibility is determined by the rules of evidence."  *Haskie*, 399 P.3d at ___, ¶ 16.  "Thus, evidence of offender characteristics may be admissible, subject to a Rule 403 analysis, if it is relevant for a reason other than to suggest that the defendant possesses some of those characteristics and therefore may have committed the charged crimes."  *Id*. at ¶ 17.

¶13            In this case, Dr. Dutton identified the five stages of victimization as victim selection, engagement, grooming, assault, and concealment, and clarified that "the process of victimization is the child's reaction to the perpetrator's behavior."  She testified that it is more common for children to be abused by someone they know, in part because they are warned to be afraid of strangers, and in part because greater access provides more opportunity.  This testimony and her testimony on the five stages of victimization linked victims' delays in reporting the abuse, their acceptance of the abuse as normal, and their parents' unwillingness to accept their claims of abuse to common practices employed by offenders.  In context, Dr. Dutton's testimony on the common practices employed by perpetrators, such as selecting vulnerable victims, gaining their trust, grooming them, engaging them in physical horseplay as a prelude to assault disguised as accident, and ordering them not to tell about the assault was designed not to profile the typical offender, but rather to explain why abuse often continues undetected, and to explain why victims do not immediately report the abuse.  This type of testimony is permissible, provided it is not offered as substantive evidence of the defendant's guilt. *Cf. State v. Garcia-Quintana*, 234 Ariz. 267, 270-74, ¶¶ 11-29 (2014) (holding that expert testimony on the methods used by drug trafficking organizations to smuggle drugs across the desert was permissible modus operandi testimony, not impermissible drug courier profile evidence).

¶14            Moreover, Dr. Dutton's testimony on the common methods perpetrators employ to ensure a victim does not report the sexual abuse did not apply in large part to the circumstances here, in which the victim immediately reported the sexual abuse after a single occurrence.  Nor did the prosecutor use Dr. Dutton's testimony as substantive evidence of Garcia's guilt.  In opening statement, the prosecutor only briefly mentioned that the jury was "going to hear from an expert who deals with the victimization process in child sex abuse cases."  In closing argument, the prosecutor did not compare the conduct of a typical perpetrator to Garcia's conduct.  Rather, the prosecutor briefly described each of the five stages of victimization, and told the jury that it could give this testimony whatever

weight it concluded it deserved.  The only argument the prosecutor made in rebuttal closing argument with respect to Dr. Dutton's testimony was in response to defense counsel's argument that there was no evidence of grooming in this case.  Even then, the prosecutor simply argued that Garcia's conduct in frequently giving the victim money, and his question as to what the word "d—k" meant immediately before pulling her pants down, was evidence of grooming.  Finally, as instructed by our supreme court, *see Haskie*, 399 P.3d at ___, ¶ 26, the court gave the jury a limiting instruction explaining the narrow purpose and scope of Dr. Dutton's testimony.

**¶15**        On this record, Dr. Dutton's testimony did not constitute impermissible offender profiling, and accordingly, the court did not err, much less fundamentally err to Garcia's prejudice, in admitting it.

## II.        Evidence of the Victim's Truthful Character

**¶16**        Garcia argues that the court fundamentally erred in allowing four of the victim's family members to testify as to her character for truthfulness in the absence of a direct attack on her truthfulness.

**¶17**        As Garcia acknowledges, because he did not object to any of this testimony at trial, we review for fundamental error only.  *Henderson*, 210 Ariz. at 568, ¶ 22.  On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby.  *Id.* at 567, ¶ 20.

**¶18**        Garcia has failed to meet his burden.  Opinion evidence of a witness's truthful character "is admissible only after the witness's character for truthfulness has been attacked."  Ariz. R. Evid. 608(a).  Garcia, however, attacked the victim's character for truthfulness in his opening statement:

> What the State does not tell you in their opening is that the alleged victim, the accuser, admitted that she made parts of the story up.  The accuser changed her story.  And that will come out at trial.

> * * *

> And if Ms. Dutton says, well, sometimes, you know, a nine year old might say one thing and then change the story – but don't worry, she's not lying.  Well, sometimes they are. Sometimes they are.

And drawing the connection just between an expert who knows nothing about this case and trying to smooth over or fill in the gaps where there were lies or where there was a change in story or where that was an admission that, I made some things up, don't let it fill that gap. Think about it critically. Keep the open mind, and I look forward to closing argument.

Thank you.

**¶19** Further, although defense counsel did not directly attack the victim's truthfulness when she was on the witness stand, he indirectly attacked her version of events by eliciting testimony that she met with the prosecutor three times before trial, and had talked about the case beforehand with the prosecutor, the detective, the victim-witness advocate, and her mother.

**¶20** On direct examination of the next witness, one of the victim's uncles, the prosecutor elicited testimony that the victim told "little lies," "just little kid stuff," but no more than any other of the children staying at the house. On cross-examination, defense counsel prompted an additional admission from this witness that he had told the police officer who interviewed him after the incident that the victim "likes to lie a lot." The prosecutor subsequently elicited testimony from three additional relatives that the victim had told "little kid lies" before, but not any more than other children had told, and she had not ever lied to them about something big.

**¶21** The testimony was not improper, because an attack on a witness's character for truthfulness in opening statement by itself may be a sufficient prerequisite to introduce evidence of truthfulness under Rule 608(a). *See United States v. Jones*, 763 F.2d 518, 522 (2d Cir. 1985); Ariz. R. Evid. 608(a), Comment to 2012 Amendment (amended to conform to Federal Rule of Evidence 608); *Salazar-Mercado*, 234 Ariz. at 592-93, ¶ 7 (application by federal courts of rules of evidence amended to conform to the federal rules sheds light on the meaning of the Arizona rules). Moreover, there is no doubt that the uncle's testimony on cross-examination about the victim's "lies" was a direct attack on the victim's truthfulness, which rendered the testimony of the other relatives admissible under Rule 608(a). To the extent that the prosecutor's question on direct examination of the uncle about the victim's truthfulness was premature, it was not fundamental, prejudicial error.

**CONCLUSION**

¶22    For the foregoing reasons, we affirm Garcia's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA