NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

SHY'HEEM DONTE DRIFFIN, *Appellant*.

No. 1 CA-CR 25-0083

FILED 02-24-2026

---

Appeal from the Superior Court in Mohave County
No. S8015CR202400428
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Anni Hill Foster joined.

---

**H O W E**, Judge:

¶1 Shy'heem Donte Driffin appeals his conviction and sentence for transportation of drugs for sale. For the reasons below, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 A state trooper with a K-9 partner stopped a car near the Arizona-Nevada border for following too close. Driffin was in the car's passenger seat and his girlfriend was driving. The trooper noted that Driffin's girlfriend seemed nervous and asked her to come to his patrol car so he could issue a traffic warning. When he asked her who rented the car, she said her uncle, who was not present, rented it. When the trooper separately asked Driffin, he told the trooper that his family member, who also was not present, rented the car. In addition to this basic inconsistency, Driffin and his girlfriend gave conflicting answers about where they were driving. Driffin told the trooper that they were going to a bowling alley and to pick someone up from the airport, but he was not sure which airport. His girlfriend told the trooper that they were visiting Driffin's family for a few days, but she was not sure for how long, had no address, and had no return flight booked, despite having bought a one-way ticket.

¶3 As he finished the warning, the trooper became suspicious "that there may be more going on beyond the traffic violation." He had his K-9 sniff the car and called another trooper for support. The K-9 alerted and the officers searched the car. In the car's trunk, officers found Walmart bags containing 25 pounds of a substance that later tested positive for methamphetamine. The time between the trooper approaching the car and finding the substance was 20 minutes.

¶4 The officers then detained Driffin and his girlfriend and informed them of their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Officers then transported the car, drove Driffin and his girlfriend to a field office, and completed a more thorough search of the car, where they found

more suspected methamphetamine. Ultimately, they found a total of 8 gallon bags of methamphetamine.

¶5        A detective from the Arizona Department of Public Safety interviewed Driffin, who denied knowing anything about the drugs. In this interview Driffin explained that he and his girlfriend flew into Las Vegas, rented a car, drove to the Los Angeles airport to drop off a cousin and were now "driving to St. George to meet another friend." He also told the detective that he went to a Walmart in Las Vegas.

¶6        Before trial, Driffin moved to suppress the drug evidence, arguing that the trooper had neither reasonable suspicion to initiate the traffic stop nor reasonable suspicion to extend the stop for a K-9 sniff. The court held an evidentiary hearing at which the trooper who stopped Driffin testified. The trooper testified that Driffin and his girlfriend's stories about who rented the car and where they were going were inconsistent and suspicious. *See supra* ¶ 2. He also said that drug-trafficking organizations commonly use rental vehicles and the person who rented the vehicle is not always present. He testified that the location of the stop—near the state border—and Driffin's girlfriend's nervousness added to his suspicions. The court denied Driffin's motion to suppress after finding, based on the totality of the circumstances, that reasonable suspicion supported both the stop and the additional detention for the K-9 sniff.

¶7        Also before trial, the State moved in limine to request that the court allow it to "admit relevant drug expert testimony and modus operandi evidence" at trial. It sought to have the detective who interviewed Driffin, testify not just about the interview but also as an expert in drug trafficking to help the jury understand the "modus operandi of a drug-trafficking organization." Driffin opposed the motion. After a hearing, the court granted the motion in limine, noting that "general modus operandi testimony is admissible," but "cautioning the State that if it's tied to the defendant in any way" it might become inadmissible drug courier profile evidence.

¶8        At trial, the State sought to prove that Driffin "knew that he was transporting illegal drugs." The State called the detective who testified first about his investigation and interview of Driffin. Then, the State paused his testimony and informed the court and defense counsel that he would be "transitioning now from fact to expert testimony." In open court, the State signposted that it was "going to turn now away from the facts of this case and turn to a different topic" before asking the detective if he was "familiar with the practices and habits of drug trafficking organizations." The

detective then testified that drug-trafficking organizations generally do not use unwitting couriers, that couriers are typically paid in cash, and that trafficking organizations can be violent.

¶9          In its closing argument, the State argued that some evidence suggested Driffin "is not only driving, but he's getting paid to do so. As we heard from [the detective], it's common for drug trafficking organizations to pay couriers to transport their illegal drugs." Also in closing, the State connected a text Driffin received warning him "[d]on't get beat up" to the detective's testimony that trafficking organizations can be violent. The State concluded that, in the detective's expert opinion, "these organizations don't use unknown couriers," implying that Driffin was aware of the methamphetamine.

¶10          Before deliberations, the court instructed the jury that opening statements and closing arguments are not evidence, and that jurors were to "[d]etermine the facts only from the evidence produced" consisting of testimony and exhibits. The court also instructed the jury that "[t]he testimony of a law enforcement officer is not entitled to any greater or lesser importance or believability" and that it may accept or reject expert opinion testimony.

¶11          The jury convicted Driffin of transportation of dangerous drugs for sale, a class 2 felony. The court sentenced him to ten years' incarceration with credit for 61 days of presentence credit. Driffin appeals and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4033(A).

## DICUSSION

¶12          Driffin argues that the superior court erred by (1) denying the motion to suppress and (2) admitting improper drug courier profile evidence.

### I.          Motion to Suppress

¶13          Driffin first argues that "[t]he superior court erred by denying the motion to suppress based on an illegal detention which lasted beyond the purpose of the traffic stop without reasonable suspicion." We review the court's factual findings on a motion to suppress for abuse of discretion, but consider the "ultimate legal determination de novo." *State v. Evans*, 237 Ariz. 231, 233 ¶ 6 (2015).

¶14        To determine whether sufficient reasonable suspicion for an officer to stop a person exists, courts consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "From that whole picture the officers must derive a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Evans*, 237 Ariz. at 234 ¶ 8 (cleaned up). We give consideration "to the specific reasonable inferences [that an officer] is entitled to draw from the facts in light of his experience." *Id.*

¶15        Although Driffin does not challenge the validity of the trooper's initial stop for following too close on appeal, *see supra* ¶ 6, he contends that the trooper improperly extended the stop to conduct the K-9 sniff of the car. Absent reasonable suspicion, officers may not extend a traffic stop to conduct a K-9 sniff. *Rodriguez v. United States*, 575 U.S. 348, 353–57 (2015). But the trooper testified at the suppression hearing regarding the factors that gave rise to his reasonable suspicions about additional criminal activity. He explained that Driffin and his girlfriend's conflicting stories about who rented the car and where they were going were suspicious. He testified, relying on his experience working on hundreds of drug trafficking investigations, that "part of the tradecraft of smuggling is . . . you'll have a cover story, an idea of what you're gonna say if you're stopped or contacted by law enforcement, but when the details aren't—it's hard to make all of the details match when all of it is really a lie." He elaborated that drug-trafficking organizations commonly use rental vehicles and the individual who rented the vehicle is not always present. These facts together support the court's conclusion that the trooper had sufficient reasonable suspicion to conduct a K-9 sniff. *See Evans*, 237 Ariz. at 235 ¶¶ 12–13 (an officer must only "exercise common sense to determine whether the facts justify an objectively reasonable suspicion"). The court did not err.

## II.    Modus Operandi Evidence

¶16        Driffin also argues that "[t]he superior court erred by admitting improper drug courier profile evidence." He contends that the detective's expert testimony about drug-trafficking organizations and couriers constituted inadmissible drug courier profile evidence rather than modus operandi evidence. We review the admission of evidence for abuse of discretion, *State v. Haskie*, 242 Ariz. 582, 585 ¶ 11 (2017), and—because Driffin objected to the State's motion in limine regarding the detective's testimony—we review any error for harmless error, *see State v. Garcia-Quintana*, 234 Ariz. 267, 269 ¶ 5 (App. 2014) ("[W]here a motion in limine is made and ruled upon, the objection raised in that motion is preserved for

appeal.") (citation omitted). "Error . . . is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Bible*, 175 Ariz. 549, 588 (1993).

**¶17**     "A drug courier profile is a loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *State v. Lee*, 191 Ariz. 542, 544 ¶ 10 (1998). "While expert testimony concerning the structure and methods used by drug trafficking organizations is admissible, the expert may not provide an opinion comparing the modus operandi of such an organization with the conduct of a defendant in a particular case." *Garcia-Quintana*, 234 Ariz. at 271 ¶ 14. In other words, "[t]he [S]tate may not offer 'profile' evidence as substantive proof of the defendant's guilt." *Haskie*, 242 Ariz. at 586 ¶ 15. But "there may be situations in which drug courier profile evidence has significance beyond the mere suggestion that because an accused's conduct is similar to that of other proven violators, he too must be guilty." *Lee*, 191 Ariz. at 546 ¶ 19. Evidence may be admitted "to assist a jury in understanding the modus operandi of a drug-trafficking organization," *State v. Escalante*, 245 Ariz. 135, 142 ¶ 22 (2018), or "to explain how a person's actions may indicate their active participation in a crime," *Garcia-Quintana*, 234 Ariz. at 271 ¶ 13. That modus operandi evidence "may indicate [the defendant's] active participation in a crime" does not transform it into inadmissible profile evidence. *Id.* at 271 ¶¶ 13, 15; *see Escalante*, 245 Ariz. at 143 ¶ 25.

**¶18**     Here, the detective testified as an expert generally about drug-trafficking organizations and couriers. *Supra* ¶ 8. His explanation that trafficking organizations do not tend to use unknown couriers, can be violent, and often pay their couriers in cash was modus operandi evidence explaining general practices. *See State v. Gonzalez*, 229 Ariz. 550, 553–54 ¶ 13 (App. 2012) ("Expert testimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters is not drug courier profile evidence, but rather, is *modus operandi* evidence."). And he did not compare the evidence "with the conduct of [Driffin] in [this] particular case." *Garcia-Quintana*, 234 Ariz. at 271 ¶ 14. In fact, the State took a break between the detective's testimony about Driffin specifically and the modus operandi testimony. The State clearly noted this separation to the jury by commenting that the testimony would "turn now away from the facts of this case." The court did not err in allowing the detective's modus operandi testimony.

¶19 Driffin further argues that the way the State connected the detective's testimony to Driffin's case in its closing argument was error. But "there [i]s nothing improper about" the State "describ[ing] how the actions of [Driffin] fit into the modus operandi of a drug trafficking organization." *Id.* at 273 ¶ 29. The State may "argue[] reasonable inferences to the jury based on the expert testimony of the officers." *Id.* The State could reasonably argue about the detective's testimony that trafficking organizations do not tend to use unknown couriers supported the knowledge element of the crime. *See* A.R.S. § 13-3407 (A)(7) ("A person shall not knowingly . . . [t]ransport for sale . . . a dangerous drug."). Further, statements by attorneys are not evidence, the jury was instructed as such, and we presume jurors follow their instructions. *State v. Vargas*, 251 Ariz. 157, 165 ¶ 17 (App. 2021). Thus, any potential error would be harmless. *See Bible*, 175 Ariz. at 588.

## CONCLUSION

¶20 For the reasons stated, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JR