959 P.2d 799

**STATE of Arizona, Appellee.**

v.

**Robert LEE, Appellant.**

**No. CR–97–0100–PR.**

Supreme Court of Arizona,
En Banc.

May 28, 1998.

Grant Woods, Attorney General by J.D. Nielsen, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for Appellant.

OPINION

ZLAKET, Chief Justice.

¶1 Shortly before midnight on October 21, 1994, Robert Lee entered Terminal 3 at Phoenix Sky Harbor Airport carrying a fairly new, hard-sided suitcase. He stopped a few feet in front of the American Trans Air ticket counter and put the bag down. Moments later, Myrtis Harrison hurried into the terminal, walked directly to the counter, and purchased two tickets on a flight leaving within minutes for Chicago. Lee joined Harrison at the counter, setting the suitcase on the luggage stand.

¶2 An undercover officer with the Phoenix Commercial Drug Interdiction Unit noticed Lee's entrance into the terminal. The officer watched him for a few minutes and, when the suitcase had been checked and placed on the baggage conveyor, contacted another narcotics agent who had a dog trained to detect drugs. In the baggage area, the dog "alerted" to the suitcase. The detectives then seized the luggage and arrested both Lee and Harrison near the ticket counter. Harrison had in her possession the baggage claim check, and Lee had keys in his pocket that fit the luggage. After obtaining a search warrant, police opened the suitcase. Inside, along with a garment bag holding Harrison's clothing, were six heat-sealed plastic packages containing four kilograms of marijuana.

¶3 Harrison and Lee were each charged with possession for sale of marijuana weighing four pounds or more, and transportation for sale of marijuana weighing over two pounds, both class 2 felonies. Early in the proceedings, the state and the defendants agreed to a severance. Judge Peter D'Angelo granted their stipulated motion. About six months later, Harrison reversed her position and moved to consolidate the cases. The state opposed the motion because it had already offered Lee a plea agreement, the

terms of which would have allowed him to plead guilty to a class 4 felony provided he testified at Harrison's trial. The state indicated that it would likely withdraw the plea offer if the motion to consolidate was granted. Judge D'Angelo denied the motion.

¶ 4 A few weeks later, on the eve of jury selection in Harrison's trial, Judge Paul Katz on his own initiative ordered the cases reconsolidated. The state withdrew Lee's plea offer and the defendants were tried together. The jury acquitted Harrison, but found Lee guilty on both counts. The court of appeals affirmed by memorandum decision.

## CONSOLIDATION

¶ 5 Defendant claims that the trial court erred when it consolidated these cases because it interfered with a pending plea offer. We examine the record for a clear abuse of discretion. *See State v. Kinkade,* 140 Ariz. 91, 93, 680 P.2d 801, 803 (1984).

¶ 6 Defendants may be joined *"by the court* or upon motion of either party, provided that the ends of justice will not be defeated thereby." Ariz. R.Crim. P. 13.3(c) (emphasis added). Lee argues that following consolidation, the state no longer had any incentive to plea bargain and he was unfairly deprived of the opportunity to obtain a favorable deal. We observe, however, that a defendant is not entitled to a plea offer as a matter of right. *See State v. Morse,* 127 Ariz. 25, 31, 617 P.2d 1141, 1147 (1980). Plea bargaining is nothing more than a pragmatic tool for enhancing judicial economy, conserving state resources, and promoting justice. *See id.* at 32, 617 P.2d at 1148.

¶ 7 While the state and a defendant may negotiate over "any aspect" of a case, including sentencing, the trial court ultimately has authority to approve or reject a bargain in the interests of justice. *See* Ariz. R.Crim. P. 17.4(d). Such a decision falls within the judge's sound discretion, and wide latitude is permitted in this regard. *See State v. De Nistor,* 143 Ariz. 407, 411, 694 P.2d 237, 241 (1985).

¶ 8 The transcript of the pretrial hearing, in which Judge Katz raised reconsideration on his own initiative, shows that he knew of the state's plea offer and recognized that if the cases were joined for trial, Lee would likely refuse to testify in order to avoid incriminating himself. He stated:

> The State should either enter a plea agreement with Mr. Lee or it shouldn't . . . . if the State feels that its case against Mr. Lee is weak or deficient or the State feels that he is the less culpable defendant, if it in good faith believes that the plea agreement [that] has been offered to him . . . is appropriate, it ought to be entered on the record of this court or the State is free to withdraw from it or Mr. Lee is free to withdraw from it.

¶ 9 The record indicates that Judge Katz complied with Rule 13.3(c). He reviewed the complete file, weighed the evidence advanced at the hearing, and considered the arguments of counsel. In the end, the judge found no "real articulable reason" or "legal ground" to maintain separate trials other than the creation of a favorable environment for Lee's plea agreement. We find no abuse of discretion.

## DRUG COURIER PROFILE TESTIMONY

¶ 10 Defendant further asserts that the trial court erred in admitting drug courier profile testimony as substantive evidence of guilt. A drug courier profile is a loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity. *See* Mark J. Kadish, *The Drug Courier Profile: In Planes, Trains, and Automobiles; And Now in the Jury Box,* 46 Am. U.L.Rev. 747, 748 (1997). No nationally recognized profile exists, and law enforcement agencies, even individual officers, develop their own "profiles" based on experience. *See id.* Courts commonly describe drug courier profiles as an "informal compilation of characteristics" or an "abstract of characteristics" typically displayed by persons trafficking in illegal drugs. *See Reid v. Georgia,* 448 U.S. 438, 440–41, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980);

*Florida v. Royer,* 460 U.S. 491, 493, 103 S.Ct. 1319, 1322, 75 L.Ed.2d 229 (1983).

¶ 11 Generally, such profile evidence is offered in the context of suppression and probable cause hearings, where law enforcement's justification for a stop, arrest, or confiscation is at issue. *See, e.g., Royer,* 460 U.S. at 502, 103 S.Ct. at 1326 (noting that mannerisms and other characteristics matching a "drug courier profile" may be sufficient grounds for a brief investigative police stop). Increasingly, however, profiles have been used for other purposes: (1) as background for a police stop and search, *see United States v. Gomez–Norena,* 908 F.2d 497, 501 (9th Cir.1990) (finding no error in using a drug courier profile to provide jurors with a full portrayal of events surrounding arrest); (2) as foundation for expert opinions, *see United States v. Webb,* 115 F.3d 711, 715 (9th Cir.1997) (permitting drug courier profile testimony of police expert to assist jury in understanding why a person would conceal a weapon in the engine of a car); (3) to explain a method of operation, *see United States v. Cordoba,* 104 F.3d 225, 230 (9th Cir.1996) (approving the use of drug courier profile testimony to "assist the jury in understanding modus operandi in a complex criminal case"); and (4) as rebuttal evidence, *see United States v. Beltran–Rios,* 878 F.2d 1208, 1213 (9th Cir.1989) ("The Government may introduce profile testimony ... only to rebut specific attempts by the defense to suggest innocence based on the particular characteristics described in the profile.").

▆ ¶ 12 Notwithstanding these exceptions, a significant majority of jurisdictions have condemned the use of drug courier profile evidence as substantive proof of guilt. *See State v. Walker,* 181 Ariz. 475, 481, 891 P.2d 942, 948 (App.1995) (citing cases from the Fourth, Fifth, Eighth, Ninth, and Eleventh federal circuits, as well as various state courts). We agree with this position. As our court of appeals has stated in the context of car thefts, the "use of profile evidence to indicate guilt ... creates too high a risk that a defendant will be convicted not for what he did but for what others are doing." *State v. Cifuentes,* 171 Ariz. 257, 257, 830 P.2d 469,

469 (App.1991). This observation is particularly relevant to the case before us.

¶ 13 To *obtain a conviction of possession* or transportation for sale, the state had to prove that the defendant knew there was marijuana in the suitcase. *See* A.R.S. § 13–3405(A)(2)("A person shall not knowingly possess marijuana for sale."); A.R.S. § 13–3405(A)(4)("A person shall not knowingly transport for sale, import into this state or offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer marijuana."). Under Arizona law and the jury instructions here, "knowingly" means having an awareness or belief of the conduct at issue. A.R.S. § 13–105(9)(b) (West Supp. 1996) (formerly § 13–105(6)(b)). In attempting to prove such knowledge, the prosecutor elicited testimony from Officer Galbari, who said that she stopped Lee and Harrison because they were toting a "large hard-sided plastic suitcase," were taking the "last flight out to Chicago," a "very high demand area for the shipment of illegal drugs from Arizona," and "in my experience working at the airport for four years and contacting people that do have illegal drugs with them, they more often then not check in extremely late for their departing flights." The dog's positive alert subsequently supported the officer's suspicions.

¶ 14 The attorneys for both Harrison and Lee objected to the testimony and later moved to strike it. The state argued that the evidence was necessary to meet its burden of proof. Because this was a transportation and possession for sale case, it said,

> we have the right to show drug courier activities and how consistent this was with them.... Part of their knowledge would go to the fact that their actions are consistent with drug couriers and drug activities. And they do have knowledge of it because their actions are consistent with it.

The fault in this reasoning lies in the assumption that because someone shares characteristics—many of them innocent and commonplace—with a certain type of offender, that individual must also possess the same criminal culpability.

¶ 15 The trial judge might have salvaged the situation at this point by striking the

testimony. Instead, he allowed the line of questioning to continue, permitting the state to introduce concepts such as "demand" cities (away from the borders where illegal drugs are highly coveted) and "source" cities (such as Phoenix, with easy access to Mexican suppliers).

¶ 16 Matters only worsened when Harrison's counsel began his cross-examination of Officer Galbari: "Well, let's go over your courier profile that you were talking about earlier." Harrison's attorney then pursued at length the factors that the officer had relied on to make the arrest. He explored the significance of hard versus soft-sided luggage, the lack of identification on the bag, the time of day of the flight, destination and departure cities, the gender and age of the typical courier, and other patterns of behavior. Counsel's apparent purpose was to undermine the reliability of this type of information, but in emphasizing it he effectively encouraged the jurors to mentally compare the defendant's actions with the profile being discussed.

¶ 17 The following day, the judge heard argument on motions to strike the testimony or declare a mistrial. He ultimately found no error in admitting the evidence. For the remainder of the trial, the courier profile theme became a steady refrain, in direct testimony, cross-examination, and closing argument.

¶ 18 We find that at least by the time of Officer Galbari's cross-examination, the prejudicial effect of the drug courier profile was apparent. This evidence, however, should not have been admitted in the first instance since its only purpose was to suggest that because the accuseds' behavior was consistent with that of known drug couriers, they likewise must have been couriers. It makes no difference to our conclusion that counsel for the co-defendant contributed to the harm. Neither is the state's justification for offering the evidence of any convincing import. By the time of trial, the reasons for the arresting officers' suspicions were no longer relevant. This was not a suppression hearing, nor was there an unresolved issue of probable cause. The state had to prove beyond a reasonable doubt defendants' awareness or

belief as to the possession and transportation for sale of marijuana. Such an element could not be supplied by means of a drug courier profile. To hold otherwise would open the door to all sorts of "profiles" developed by individual law enforcement officers in various settings, both in and out of drug enforcement. Guilt by association with certain "characteristics" is the obvious danger of such a scenario, and easily explains why the "split of authority" noted by the dissent is so lopsided in favor of the stance we take today.

¶ 19 As noted above, there may be situations in which drug courier profile evidence has significance beyond the mere suggestion that because an accused's conduct is similar to that of other proven violators, he too must be guilty. This is not one of those situations. Moreover, we do not agree with the court of appeals or our dissenting colleagues that the admission of this evidence was harmless. For such a conclusion to stand, we would have to find "beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993); *see also State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980). Here, there were two defendants but only one suitcase. No fingerprints were found inside the luggage, no one testified to having seen the drugs packed, and no other evidence was introduced linking either defendant directly to the contents of the suitcase. Consequently, the profile testimony might well have weighed heavily in the jury's evaluation of the knowledge issue. From our vantage point, it cannot be said beyond a reasonable doubt that this evidence did not affect the verdict.

¶ 20 The trial judge obviously attempted to repair the damage with the following instruction:

Evidence of other investigations by the police officers involved in this case and evidence regarding the basis for their suspicions of the defendants has been admitted into evidence in this case. Such evidence is not to be considered by you to prove the character of the defendants or to show that they committed the offenses charged. It may, however, be considered

by you regarding the police investigation techniques utilized in this case.

This charge, however, failed to specifically identify the drug courier testimony as that which the jury was prohibited from considering. Moreover, we conclude that it was inadequate to obviate the risk of prejudice. *See State v. Grannis*, 183 Ariz. 52, 58, 900 P.2d 1, 7 (1995) (citing *State v. Runningeagle*, 176 Ariz. 59, 68, 859 P.2d 169, 178 (1993)).

¶ 21 The dissenters claim to find support for their harmless error analysis in *United States v. Lui*, 941 F.2d 844 (9th Cir.1991). We respectfully disagree. The evidence of guilt in *Lui* was much stronger than in this case. In the first place, Lui was alone. Moreover, he had arrived in Los Angeles from Hong Kong following a ten day stop in Taiwan and two days in Korea. He was being checked through international customs when the inspector denoted some degree of nervousness. But that was not all. Even though Lui told the inspector he had come to the United States to show jade figurine samples to a relative, he had not claimed them on his customs declaration. He thereafter identified his own bags. He never asserted that anyone else owned or had access to them. Behind false siding, the customs inspector found over twelve kilograms of nearly 96 percent pure heroin.

¶ 22 The independent evidence of guilt in the Seventh Circuit case cited by the dissent, *United States v. Foster*, 939 F.2d 445 (7th Cir.1991), was even more overwhelming. In any event, none of the federal cases referred to, directly or indirectly, are binding on us. They may be helpful in providing guidance, but that is all. We deal here exclusively with a matter of state law.

## SEVERANCE

¶ 23 Both defense counsel moved for severance on more than one occasion during the trial. Defendant Lee contends a severance was required once it became apparent that he and Harrison were offering "antagonistic defenses." *State v. Cruz*, 137 Ariz. 541, 545, 672 P.2d 470, 474 (1983) (holding that the trial judge must sever when defenses are so antagonistic as to be mutually exclusive). While the record suggests that the parties' defenses were mutually exclusive and antagonistic, each side implying the other had secreted the drugs in the suitcase, we need not decide this issue in view of our disposition on other grounds.

## DISPOSITION

¶ 24 Because drug courier profile testimony was improperly admitted as substantive proof of guilt, and we cannot say that this error was harmless, we reverse and remand for a new trial.

FELDMAN and MOELLER, JJ., concur.

JONES, Vice Chief Justice, concurring in part, dissenting in part.

¶ 25 I would affirm the defendant's convictions and would adopt the reasoning of the court of appeals. While I agree with the majority that "drug profile courier" evidence should not be admitted to prove a substantive element of the crime charged, I disagree, on the record before us, that the error was prejudicial or harmful to the defendant. I also disagree with the belief stated by our dissenting justice that "drug courier profile" evidence is relevant to the defendant's knowledge of his own possession and thus should have been considered. In my view, profile evidence bears little or no relationship to defendant's personal knowledge of his own criminal act. Moreover, the majority has not abandoned harmless error analysis in appropriate cases [1] but simply holds, *on this record*, that admission of the evidence was error and that the error was unduly prejudicial.

¶ 26 Courier profile evidence in drug cases can be relevant to threshold or background questions, not present in the instant case, such as, the legitimacy of an arrest or stop, the suppression of evidence in cases of search and seizure or probable cause, the defendant's identity, or the jury's ability to understand *modus operandi*. Profile evidence serves no purpose, however, where, as here, the defendant's specific awareness that

---

1. See the majority's comparison of the facts in *United States v. Lui*, 941 F.2d 844 (9th Cir.1991), with the facts of the instant case on the issue of harmlessness. Majority opinion at ¶ 22.

548

he possesses drugs is the only issue to be resolved. The reason is that the conduct of other persons unconnected with the crime charged, their manner, style, and patterns of behavior, offer nothing persuasive as to this defendant's personal knowledge of his crime. That a crime was committed was made clear by discovery of the drugs. Linking defendant to the crime depends on independent evidence of the defendant's own state of mind.

¶ 27 The problem is the invitation to prejudice. "Profile" evidence is inherently prejudicial in a case of this nature because of the potential for including innocent citizens as profiled drug couriers. See United States v. Beltran–Rios, 878 F.2d 1208, 1210 (9th Cir. 1989); United States v. Hernandez–Cuartas, 717 F.2d 552, 555 (11th Cir.1983).

¶ 28 On the record before us, I would adhere to the rule followed by the majority, that it was error to admit drug courier profile evidence at trial to prove defendant's knowledge as a substantive element of the crime charged. In accord with the dissent, however, I would find the error harmless because I believe the independent evidence of defendant's guilt outweighs whatever prejudice may have been caused by the profile testimony.

¶ 29 Numerous cases from other jurisdictions support the foregoing result. Among them, two federal cases, though admittedly not binding, are persuasive. In United States v. Quigley, 890 F.2d 1019 (8th Cir. 1989), drug courier profile evidence was introduced through a narcotics agent. The agent testified of various profile characteristics and tied them to Quigley. Id. at 1028. The court held that to admit such evidence was error because of the potential for prejudice. But there was introduced at trial ample other evidence linking Quigley to the possession of cocaine. This prompted the court to affirm the conviction and hold that the admission of "drug courier profile" characteristics was harmless error.

¶ 30 Similarly, in United States v. Lui, 941 F.2d 844 (9th Cir.1991), cited by the dissent and factually distinguished by the majority, the Ninth Circuit denounced the use of drug courier profile evidence but held,

on the facts of the case, that the error was harmless because the independent evidence of defendant's guilt was sufficient to sustain the conviction.

¶ 31 In both Quigley and Lui substantial independent evidence was introduced linking the defendants to knowing possession of the drugs. Similarly, there is sufficient proof in this record, independent of the "profile," that defendant was fully aware that he possessed drugs. He was observed, alone, carrying the suitcase containing the drugs into Phoenix Sky Harbor terminal three. When his traveling companion, the ticket purchaser, arrived and went to the ticket counter, defendant, himself, approached the counter, walked to the companion, and placed the suitcase on the luggage stand next to her. The companion bought the tickets and received them along with the baggage claim check. The persuasive evidence of defendant's knowledge of the suitcase contents was that he physically carried the bag into the terminal, delivered it to the ticket agent, and had sole possession of the key. The defendant alone could access the suitcase, and he alone controlled the contraband which the suitcase contained.

¶ 32 In my mind, these facts overcome any prejudice caused by the profile evidence. I do not believe the error materially affected the verdicts. See United States v. Echavarria–Olarte, 904 F.2d 1391, 1398 (9th Cir. 1990). I would hold that the guilty verdicts were sufficiently grounded in evidence independent of the drug courier profile characteristics and that such evidence was adequate to connect defendant to actual possession and knowledge of the drugs beyond a reasonable doubt.

MARTONE, Justice, dissenting.

¶ 33 I cannot join the court's opinion for two separate and independent reasons. First, I agree with the United States Court of Appeals for the Seventh Circuit that there is no per se bar to the admission of drug courier profile evidence as substantive proof of guilt. United States v. Foster, 939 F.2d 445, 451 (7th Cir.1991). Second, even if such

evidence were inadmissible, this is a plain case of harmless error.

## I. Drug Courier Profile as Substantive Evidence of Guilt [2]

¶ 34 There is a split of authority over whether drug courier profile evidence is admissible on the question of guilt. The differences are best expressed in two competing opinions in the United States Court of Appeals. In *United States v. Lui*, 941 F.2d 844, 847 (9th Cir.1991), the court rejected the use of drug courier profile evidence as substantive evidence of guilt, believing it to be inherently prejudicial. But in *United States v. Foster*, 939 F.2d at 451–52, the court rejected any *per se* bar to the admission of drug courier profile evidence, leaving the question of potential prejudice in any given case to the trial court. I prefer the *Foster* approach because I believe that the question of admissibility in the first instance is a question of relevance, not a question of prejudice. As the court said, "[i]f the testimony is relevant to the defendant's guilt or innocence, then it is potentially admissible at trial." *Id.* at 451. Evidence is relevant if it has "any tendency" to make the existence of any material fact more or less probable than it would be without the evidence. Rule 401, Ariz. R. Evid. All relevant evidence is admissible unless otherwise provided. Rule 402, Ariz. R. Evid.

¶ 35 Drug courier profile evidence does indeed meet the threshold "tendency" test of Rule 401. Through experience and training in the culture and practices of the drug trade, one can help the jury unmask otherwise neutral behavior. The expert's testimony is relevant to the issue of knowledge—it has a "tendency" to make it more probable that the defendant knew the suitcase contained drugs. For example, in *Foster*, the court said it "may be innocent behavior to purchase a one-way train ticket, for cash, on the same day as departure from a source city for illegal drugs, under a false name, and carrying a beeper, but it is a fair use of expert testimony to offer another explanation for such behavior." 939 F.2d at 452.

¶ 36 Prejudice, on the other hand, is squarely addressed in Rule 403, Ariz. R. Evid., where evidence otherwise relevant may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Judgment calls under Rule 403 have nothing to do with general admissibility under Rule 401. By adopting a *per se* rule of exclusion, the court melds the two doctrines into one. Relevant evidence will now be excluded in some cases in which it ought to be admitted. I agree with the Seventh Circuit that drug courier profile evidence is helpful to the jury because

> [d]espite our country's 'war on drugs' and its accompanying media coverage, it is still a reasonable assumption that jurors are not well versed in the behavior of drug dealers. The investigator and the expert witness both serve as a link to the drug culture in providing the jury with [an] understanding of the intricate patterns and *modus operandi*' of those involved in narcotics trafficking.

939 F.2d at 451–52 (citation omitted).

## II. Harmless Error [3]

¶ 37 The majority prefers the *per se* exclusionary approach of the Ninth Circuit. But in *United States v. Lui, supra,* the Ninth Circuit found that the admission of such evidence was harmless where the record overwhelmingly demonstrated the defendant's guilt. There, Lui was carrying nearly 28 pounds of heroin in suitcases to which he had the keys and he otherwise acted suspiciously. 941 F.2d at 848. Here, the suitcase contained a significant amount of drugs that were professionally packaged in heat-sealed plastic bags. Lee surrendered the suitcase at the check-in counter and had the keys to their locks. These facts alone provide overwhelming evidence of guilt. Under these

---

2. Although the majority adopts a *per se* rule of exclusion of drug courier profile evidence as substantive proof of guilt, it acknowledges that such evidence may be admissible for other purposes, e.g., to establish probable cause. *Ante,* at ¶ 11.

3. Under the majority's *per se* approach, the admission of drug courier profile evidence as substantive proof of guilt will always be error. But even under the majority's approach, it will not always be reversible error. Its erroneous admission is subject to a harmless error analysis.

circumstances, the majority could say with safety that what it perceives to be error was harmless indeed.

¶ 38   I therefore respectfully dissent.