NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

COREY HUDSON, *Appellant.*

No. 1 CA-CR 19-0337

FILED 5-26-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-001761-001
The Honorable Christopher T. Whitten, Judge
The Honorable Peter A. Thompson, Judge

**AFFIRMED IN PART; REMANDED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholas Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

---

**W I L L I A M S**, Judge:

¶1        Corey Hudson appeals his convictions of possession of marijuana and dangerous drugs (methamphetamine) for sale. For the following reasons, we affirm the convictions but remand for a hearing on the right to counsel.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In October 2016, two detectives (collectively the "detectives" or "Detective A" and "Detective B") were members of an undercover operation investigating drug trafficking. The detectives conducted four undercover drug purchases. On October 9, 2016, they exchanged $20 for marijuana from Hudson in the parking lot of a strip club. Hudson gave Detective A his phone number, which was used to identify Hudson through a records check. The detectives also obtained a photograph of Hudson from the Arizona Motor Vehicle Department and used the photograph to confirm Hudson's identity. On October 11, 2016, they contacted Hudson, met in a store parking lot, and bought an ounce of marijuana for $220. The next day, the detectives met Hudson in the same parking lot, and gave Hudson two bottles of liquor in exchange for a gram of marijuana. Later that day, the detectives moved to a nearby parking lot where they exchanged $100 for methamphetamine. The detectives identified Hudson as the man who sold them drugs on these occasions.

¶3        Hudson was indicted on four felony counts: three counts of possession of marijuana for sale, class three felonies, and one count of possession of dangerous drugs (methamphetamine) for sale, a class two felony. At the original final pretrial conference held October 31, 2018, Hudson's attorney was ill and did not attend. Hudson did attend, however, and made a request for new counsel, which the court denied. The court continued the trial; Hudson did not object.

¶4　　　　In April 2019, six days before trial, the parties discovered Detective B was involved in ongoing internal disciplinary proceedings for violating police department policies in previous unrelated cases. Specifically, Detective B indicated the police department found that, over the course of six years, he failed on no more than three occasions to write supplemental reports, and that a suspect's cell phone was lost during an investigation. The day before trial, the State filed a motion *in limine* to preclude testimony about Detective B's disciplinary proceedings.

¶5　　　　The rescheduled final pretrial conference took place the morning of jury selection. At the conference, the court granted the State's motion *in limine*, citing to Arizona Rule of Evidence 608(b), and indicating "[i]mpeachment with specific instance [sic] of conduct requires more than the record currently shows." Hudson then moved to continue the trial indefinitely to obtain the investigation records. The court denied the motion.

¶6　　　　At trial the State called three witnesses: Detective A and Detective B to identify Hudson as the man who sold them drugs, and Anthony Gennuso, a forensic scientist who testified that the substances sold were marijuana and methamphetamine. A jury found Hudson guilty on all counts, and the court sentenced him to 3.5 years each for the three counts of sale of marijuana, and 7.5 years for sale of dangerous drugs (methamphetamine), all to run concurrently.

¶7　　　　Hudson timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-2101(A)(1), 13-4031 and 13-4033(A)(1).

## DISCUSSION

I.　　*Disclosure of Disciplinary Materials*

　　　　A.　　*Request for Disclosure*

¶8　　　　Hudson argues the State unlawfully withheld impeachment evidence, and the court improperly denied his discovery request. We review a trial court's ruling on discovery and disclosure matters for abuse of discretion. *State v. Bernini*, 220 Ariz. 536, 538, ¶ 7 (App. 2009).

¶9　　　　The State contends that because Hudson did not raise the precise claims in the trial court as he does on appeal, we must review his claims only for fundamental error. "An objection is sufficiently made if it provides the judge with an opportunity to provide a remedy." *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 64 (1999); *see also State v. Kinney*, 225 Ariz.

550, ¶ 7 (App. 2010) ("To preserve an argument for review, the defendant must make a sufficient argument to allow a trial court to rule on the issue."). Hudson expressed concern about potential prejudice from his inability to review the records, and explicitly requested "to get those records and bear the issue out." Because this gave the court the opportunity to rule on the disclosure issue, it was sufficient to preserve the general issue for appeal. We therefore review for abuse of discretion. *See Bernini*, 220 Ariz. at 538, ¶ 7.

**¶10**        In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that prosecutors cannot suppress evidence favorable to a defendant, either deliberately or inadvertently. Prosecutors, therefore, have a "duty to disclose exculpatory and impeachment evidence in criminal cases." *Foor v. Smith*, 243 Ariz. 594, 598, ¶ 12 (App. 2018). *Brady*, however, did not create a general right to discovery in criminal cases. *Id.* "Indeed, defendants in criminal cases are generally entitled to only limited discovery." *Id.*; *see also* Ariz. R. Crim. P. 15.1. "*Brady* does not automatically require a new trial when omitted evidence is discovered"; rather, "a new trial is required only when *material* information unknown to the defense has been withheld." *Foor*, 243 Ariz. at 598, ¶ 12 (emphasis added). Information is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

**¶11**        First, it is unclear whether any records existed at the time of trial. Although the police department apparently made an internal preliminary finding that Detective B committed policy violations, the investigation was still ongoing, and therefore there is no indication any documents existed and were concealed at the time of trial. Indeed, the State noted it did not "have any documentation," and immediately disclosed Detective B's violations when it became aware of them.

**¶12**        Even assuming disciplinary records existed, there is no indication they would have impacted the trial or changed the result of the proceeding. Hudson contends the records would have been used to impeach Detective B's testimony about his training and experience. However, it is unclear how these records would have done so. Any potential disciplinary records would not negate that Detective B did, in fact, receive training and did, in fact, have experience. Further, disciplinary records from past cases would not undermine evidence that Detective B followed procedures in the present case. Indeed, Hudson had the opportunity to fully cross examine Detective B regarding his report in this case. Hudson relies upon *State v. Ashton*, 95 Ariz. 37 (1963) to argue he was

entitled to use disciplinary reports to impeach Detective B. In *Ashton*, the court held the defendant was entitled to disclosure of a police officer witness's *narrative* report, which was created during his investigation of the case being tried, and concerned events to which the officer testified at trial. *Id.* at 38. Here, unlike in *Ashton*, the reports being sought are not from the present case, and do not directly relate to Detective B's testimony at trial. Therefore, Hudson is not entitled to relief on this basis.

¶13 Hudson further claims that because the investigation revealed Detective B lost a suspect's cell phone in a prior unrelated case, this could amount to "theft," creating a basis to attack Detective B's truthfulness under Rule 608(b). There is, however, no indication theft was ever implied in Detective B's disciplinary proceedings. Hudson's argument is mere speculation, which is an insufficient basis upon which to make a challenge. *See State v. Youngblood*, 173 Ariz. 502, 506 (1993) ("Speculation is not the stuff out of which constitutional error is made.").

¶14 Finally, Detective B's testimony was corroborated by Detective A. That corroboration tends to negate any doubt potentially created by questioning Detective B's past behavior. This further eliminates any reasonable probability the outcome of the trial would have been different. Therefore, even if evidence was indeed concealed, it was not material.

     *B.    Motion to Continue*

¶15 Hudson argues the court erred in denying his motion to continue the trial to conduct further investigation into Detective B's disciplinary records. "A motion for continuance is not granted as a matter of right," and "is solely within the sound discretion of the trial judge." *State v. Jackson*, 112 Ariz. 149, 154 (1975). We will not disturb the court's decision unless there is clear abuse of discretion and the defendant is prejudiced by the denial. *Id.* "In Arizona, it is not an abuse of discretion to deny a continuance where the testimony sought is to be used for impeachment purposes." *State v. Loyd*, 118 Ariz. 106, 110 (App. 1978); *see also Jackson*, 112 Ariz. at 154.

¶16 Here, Hudson sought to use the information in the disciplinary report to impeach Detective B's testimony. Therefore, we find the trial court did not abuse its discretion in denying Hudson's request to continue the trial. *See Loyd*, 118 Ariz. at 110 (holding the court did not err by denying defendant's motion to continue when defendant requested

more time to obtain and review a disciplinary report regarding police officer witnesses for impeachment purposes).

*II.      Right to Cross-Examination*

**¶17**        Hudson argues the court erred in precluding him from referencing Detective B's ongoing disciplinary proceeding during cross-examination. Hudson contends the court's denial amounted to denial of his right to confront witnesses. We review challenges to the trial court's admission of evidence under the confrontation clause *de novo*. *State v. King*, 212 Ariz. 372, 375, ¶ 16 (App. 2006).

**¶18**        The State contends Hudson failed to make a confrontation clause objection, and we should therefore review for fundamental error. Although Hudson expressed concern about his ability to cross-examine Detective B,[1] he did so only in response to the State's motion *in limine*. Hudson never made an objection to the limited scope of cross-examination, even after the court granted the State's motion under Rule 608(b). We therefore review for fundamental error only. *See State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). This requires a defendant to "demonstrate that the error goes to the foundation of the defendant's case, takes away a right essential to the defense, or is of such magnitude that it denied the defendant a fair trial." *Id.*

**¶19**        The Sixth Amendment gives a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The United State Supreme Court has held that the "primary interest" secured by the Sixth Amendment is the right to cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). However, the right to cross-examination "is not without boundary, and trial judges 'retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *State v. Carreon*, 210 Ariz. 54, 63, ¶ 36 (2005) (quoting *State v. Cañez*, 202 Ariz. 133, 153, ¶ 62 (2002)). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The test to determine whether cross-examination was sufficient is "whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either

---

[1] Hudson's attorney mistakenly referred to Detective A instead of Detective B.

on the issues in the case or on the credibility of the witness." *State v. Lehr*, 201 Ariz. 509, 518, ¶ 30 (2002) (quoting *State v. Fleming*, 117 Ariz. 122, 125 (1977)).

**¶20** Here, Hudson asserts Detective B's disciplinary proceedings impair his credibility. Hudson argues that because the State bolstered Detective B's testimony by referring to his training, adherence to policy, and use of supplemental reports, Hudson was entitled to cross-examine Detective B on these issues with evidence from the disciplinary proceedings.[2] The disciplinary reports, however, would not be proper impeachment evidence, and do not bear upon the issues at hand. Under Rule 608(b), extrinsic evidence is only admissible to prove the witness's character for truthfulness or untruthfulness. Failure to file supplemental reports does not have any bearing on Detective B's character for truthfulness, and Hudson cannot rely upon speculation that the cell phone lost by Detective B constituted theft. *See Youngblood*, 173 Ariz. at 506. Indeed, Hudson's attorney admitted as much at the final pretrial conference, indicating "I don't have any reason to believe that it's necessarily an honesty related issue." Because the information in the reports would not have provided a basis for further cross-examination on the issues at hand, the court did not err in limiting the scope of cross-examination.

**¶21** Further, Hudson was still able to cross-examine Detective B on his past adherence to policy. Indeed, Detective B admitted he failed to follow departmental policy in the past. Although Hudson was not allowed to cross-examine Detective B to the extent Hudson wished, the extent of the cross-examination was sufficient under the Confrontation Clause's requirements. *See Fensterer*, 474 U.S. at 20. We therefore cannot say Hudson was deprived of the right to confront the witness, and we find no error, much less fundamental error.

*III.    Profile Evidence*

**¶22** Hudson argues the court erred by allowing the State to present drug-trafficking profile evidence at trial.

**¶23** Hudson filed a motion *in limine* to preclude mention of Arizona as a "source state," asked for clarification at the final pretrial

---

[2] Hudson contends for the first time on appeal that Detective B committed perjury. Because Hudson did not allege Detective B committed perjury at trial, the contention is waived. *See State v. Jones*, 197 Ariz. 290, 302, ¶ 22 (2000).

conference and during trial, and objected to certain questions on relevance or foundational grounds. However, Hudson made no objection to any evidence on grounds it constituted drug courier profile evidence, and did not even imply as much. Because Hudson failed to allow the court to provide a remedy to the State's alleged presentation of profile evidence at trial, we review for fundamental error only. *See Fulminante*, 193 Ariz. at 503, ¶ 64. This requires Hudson to establish both that fundamental error exists, and the error caused him prejudice. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005).

**¶24** "[P]rofile evidence cannot be used as substantive proof of guilt because of the 'risk that a defendant will be convicted not for what he did but for what others are doing.'" *Escalante*, 245 Ariz. at 144, ¶ 22 (2018) (quoting *State v. Lee*, 191 Ariz. 542, 545, ¶ 12 (1998)). Drug courier profile evidence "is a loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *Lee*, 191 Ariz. at 545, ¶ 10. Drug courier profiles "consist of an 'informal compilation of characteristics' or an 'abstract of characteristics' typically displayed by persons trafficking in illegal drugs." *State v. Garcia-Quintana*, 234 Ariz. 267, 270, ¶ 11 (App. 2014) (quoting *Lee*, 191 Ariz. at 545, ¶ 12). "The profiles are based on the experience of officers who have investigated illegal drug activity, and consist of a wide variety of factors, such as an individual's age, clothing, jewelry, luggage, use of cash to make purchases, nervous or unusually calm behavior, and plane travel from 'drug source' cities." *Id.*

**¶25** Hudson relies upon *Escalante*, 245 Ariz. 135, to support this claim. In *Escalante*, the court found error when the prosecution presented drug courier profile evidence throughout the case to argue the defendant was guilty because he fit the profile of typical drug dealers. *Id.* at 142, ¶ 24. Here, although some evidence presented may be analogous to the profile evidence presented in *Escalante*, the evidence was not used as substantive proof of guilt. Rather, it was used as background information to explain where the drug operators did business and therefore how the detectives ultimately became involved in the investigation. This, in contrast to drug courier profile evidence, was not improper.

**¶26** Even assuming the evidence was improperly admitted, no reversible error occurred. The evidence to which Hudson objects was minimal, the State did not attempt to prove Hudson fit a specific profile, and there was overwhelming evidence of guilt in the form of testimony from two detectives participating firsthand in four undercover drug

purchases from Hudson. Therefore, Hudson has failed to meet his burden of showing fundamental, prejudicial error.

*IV.    Right to Counsel*

**¶27**        Hudson argues he was denied his right to counsel when the court denied his request for new counsel. We review the denial of a request for change of counsel for abuse of discretion. *State v. Moody*, 192 Ariz. 505, 507, ¶ 11 (1998).[3]

**¶28**        The Sixth Amendment guarantees criminal defendants the right to representation by competent counsel. *Id.* "A defendant is not, however, entitled to counsel of choice, or to a meaningful relationship with his or her attorney." *Id.* If, however, "a defendant is forced to go to trial with counsel with whom he has an irreconcilable conflict or a complete breakdown in communication, a resulting conviction must be reversed." *State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004). "Therefore, . . . a trial judge has the duty to inquire as to the basis of a defendant's request for substitution of counsel." *Id.* at ¶ 7. "If a defendant makes sufficiently specific, factually based allegations in support of his request for new counsel, the . . . court must conduct a hearing into his complaint." *Id.* at ¶ 8 (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). "At such a hearing, the defendant bears the burden of demonstrating that he has a genuine irreconcilable conflict with his counsel or that there has been a total breakdown in communications." *Id.* To properly evaluate a defendant's request to change counsel, the court should consider the following factors:

> whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*State v. LaGrand*, 152 Ariz. 483, 486-87 (1987).

**¶29**        Hudson's statements about his attorney that "I don't think she's got any faith in me" and "I don't feel like she's anyone I can have a fair chance with" do not raise to the level of irreconcilable conflict. *See State*

---

[3] Although the State contends Hudson failed to sufficiently object, because Hudson gave the court an opportunity to provide a remedy, *see Fulminante*, 193 Ariz. at 503, ¶ 64, we review for harmless error, *see Henderson*, 210 Ariz. at 567, ¶ 18.

*v. Cromwell*, 211 Ariz. 181, 186, ¶ 29 (2005) ("A single allegation of lost confidence in counsel does not require the appointment of new counsel . . . ."). However, whether there was a complete communication breakdown with counsel is a closer question, and one the court should have further considered.

¶30        At the October 2018 final pretrial conference, defense counsel was not present, having notified the court by email she was ill and asked to reset the conference. Both the prosecutor and Hudson, however, were present. After reviewing defense counsel's email, the trial court inquired whether Hudson objected to a continuance. Hudson responded he did not, and then asked the court, "Is it possible that I can ask for [a] different [attorney]?" Hudson expounded:

> [I]n the last court appearance [defense counsel] walked out [of] the courtroom and didn't show back up, so I was basically here for myself. And I've been constantly having these problems with her. It's hard to get in contact with her. I'm calling my investigator, explaining this to him, and he's trying to contact her.

After setting a new trial date, and without inquiring further, the trial court stated:

> In order to have a motion granted to change counsel, it would have to rise to the level of a constitutional deprivation of representation . . . . What you're telling me about are communication difficulties, . . . [b]ut it wouldn't be to the level that it would rise to me being able to replace her.

¶31        It is possible that in another setting a defendant's statements similar to Hudson's may not constitute "sufficiently specific, factually based allegations" supporting a request for new counsel that would rise to the level requiring the court to conduct a hearing into the complaint. However, the circumstances here are unique. When coupled with the fact that defense counsel was not present to provide input on Hudson's communication concerns or assist the court in determining whether a complete communication breakdown with counsel had in fact occurred, the trial court should have inquired further. And, although a court need not explicitly refer to the *LaGrand* factors, the record in the present case does not indicate the court considered them, as minimally required. *See State v. Hernandez*, 232 Ariz. 313, 321, ¶ 35 (2013). Because defense counsel was not present to aid either Hudson, or the court, in Hudson's specific and

factually based claim, we conclude the court erred in failing to conduct an inquiry into Hudson's request.

¶32        Although the court's failure to conduct an inquiry was error, that failure alone is insufficient to violate the defendant's right to counsel and does not warrant automatic reversal. *Torres*, 208 Ariz. at 344, ¶ 12. Rather, "the appropriate remedy for a trial court's error in this situation is to remand for a hearing on the defendant's allegations." *Id.* at ¶ 13. On remand, the trial court must analyze Hudson's request under the *LaGrand* factors. *See id.* at ¶ 15. In doing so, the trial court is not "limited to the facts as they existed at the time it denied the motion," and should instead "consider the motion to substitute counsel in light of the facts and circumstances both when the motion was originally made and also after it was denied." *Id.* at 345, ¶ 16. It is possible, for example, that Hudson's motion "may have prompted his attorney to address [his] complaints, thereby resolving the alleged conflict." *Id.* If, on remand, Hudson establishes a total breakdown in communication with his attorney, the court is required to vacate Hudson's convictions and order a new trial. *Id.* at ¶ 18. If the court does not find a total breakdown in communication, that decision may be reviewed on appeal. *Id.* at 344, ¶ 13.

## CONCLUSION

¶33        For the forgoing reasons, we affirm Hudson's convictions, but remand for an inquiry into his right to counsel claim.



AMY M. WOOD • Clerk of the Court
FILED:    AA

11