NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERRY L. STUEBE, *Appellant.*

No. 1 CA-CR 19-0032
FILED 6-30-2020

Appeal from the Superior Court in Maricopa County
No. CR2018-108628-002
The Honorable Dewain D. Fox, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

**M O R S E,** Judge:

¶1 Jerry L. Stuebe appeals his convictions and sentences for burglary in the third degree and possession of burglary tools. In a separately filed opinion, we address whether an automated email containing a "machine-produced" video recording is inadmissible hearsay. In this memorandum decision, we address Stuebe's other claims of error. We affirm Stuebe's convictions and sentences but vacate the portion of the superior court's sentencing order that requires Stuebe to pay the costs of deoxyribonucleic acid ("DNA") testing and the assessment fees imposed on count two.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The pertinent facts and background, which we view in the light most favorable to sustaining the verdicts, *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013), are set forth in the separately filed opinion. In summary, Stuebe was arrested after officers responded to a 911 call regarding a burglary at a mostly vacant commercial property called Zanero Falls West. An automated security camera at the property recorded the burglary.

¶3 Following an eight-day trial, a jury convicted Stuebe of burglary in the third degree, a class 4 felony, and possession of burglary tools, a class 6 felony. The superior court sentenced Stuebe as a repetitive offender to concurrent terms of 10 years' imprisonment for burglary in the third degree and 3.75 years for possession of burglary tools. Stuebe timely filed a notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.      Motion for Mistrial.

¶4 Stuebe argues that the superior court erred by denying his motion for mistrial based on an alleged untimely *Brady* disclosure. *See Brady v. Maryland*, 373 U.S. 83 (1963). Stuebe also asserts that a mistrial was

required because the two-week continuance of the trial caused him prejudice. We review the superior court's ruling on an alleged *Brady* violation and the denial of a motion for mistrial for abuse of discretion. *State v. Arvallo*, 232 Ariz. 200, 201, 206, ¶¶ 6, 36 (App. 2013).

## A. No *Brady* Violation Occurred.

**¶5**        The State had placed one of its police witnesses on its so-called "*Brady* list." Before trial, the State disclosed this information to Stuebe. The disclosure included a minute entry detailing the officer's violations: false statements and material omissions made in an affidavit.

**¶6**        During trial, the State discovered and immediately disclosed an additional report prepared by the police department's internal-affairs agency that provided more detail about the violations. The State was not previously aware of the additional report. Stuebe moved to dismiss the case because of the late disclosure and, alternatively, asked for a mistrial if the court denied the dismissal. The superior court stated that it was "troubled" by the timing of the disclosure but found no bad faith by the State. The court noted that Stuebe had not cross-examined the officer regarding the previously disclosed *Brady* material that he possessed. The court denied Stuebe's motions after "balancing all of the equities and considering what the least onerous sanction" would entail.

**¶7**        After the court denied the motion for a mistrial, Stuebe requested a two-week continuance to allow adequate review of the late-disclosed *Brady* material. Because the State learned about the additional report after the conclusion of the witness's testimony, the superior court granted the requested continuance and permitted Stuebe to choose how to proceed: either recall the witness for additional cross-examination or call the witness in his case-in-chief. Stuebe chose to call the officer during his case, and he examined her at length about the report, including extensive examination concerning the late disclosure.

**¶8**        Under *Brady*, the State is required to disclose all exculpatory evidence in its possession that is material to the issue of guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citing *United States v. Agurs*, 427 U.S. 97, 121 (1976) and *Brady*, 373 U.S. at 87). Failure to provide *Brady* material may require a new trial if the violations are discovered after trial. *State v. Cota*, 229 Ariz. 136, 149, ¶ 61 (2012). However, when the State provides previously undisclosed exculpatory information during trial and the information is presented to the jury, no *Brady* violation occurs. *State v. Jessen*, 130 Ariz. 1, 4 (1981).

¶9          Applying these principles here, no *Brady* violation occurred because the information was disclosed during trial and presented to the jury. *See id.* To the extent Stuebe asks us to reconsider our supreme court's holdings in *Cota* and *Jessen*, we cannot accept his invitation. *See State v. Sullivan*, 205 Ariz. 285, 288, ¶ 15 (App. 2003) (stating that an appellate court is required to follow the Arizona Supreme Court's decisions).

## B.   Denial of Mistrial and Grant of Two-week Continuance.

¶10          "When an untimely disclosure occurs, the opposing party may move for sanctions, in which case the trial court 'shall impose any sanction it finds appropriate.'" *State v. Ramos*, 239 Ariz. 501, 504, ¶ 9 (App. 2016) (quoting Ariz. R. Crim. P. 15.7(a)). The superior court maintains broad discretion to determine the nature of such a sanction. *See id.* at ¶ 7. A "declaration of a mistrial is the most dramatic remedy for trial error," and should be granted "only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983). An appropriate sanction "should have a minimal effect on the evidence and merits of the case," and factors to consider include the importance of the witness or evidence, the degree of surprise, and whether bad faith was involved. *State v. Towery*, 186 Ariz. 168, 186 (1996).

¶11          The superior court acted within its discretion by finding that the appropriate sanction for the late disclosure was to continue the trial for sufficient review of the material. Surprise from the additional report was minimal because Stuebe was aware of the officer's *Brady* material before trial. *See Towery*, 186 Ariz. at 186. The superior court found that the State had not acted in bad faith, and Stuebe did not allege that it did. *See id.* While the *Brady* material may have been important, the court fashioned an appropriate remedy that ameliorated any harm from the late disclosure. *See id.* Hence, we perceive no error.

¶12          Stuebe speculates that the delay from the continuance "harmed the defense" and "diminished [his] standing in the jury's eyes," but offers no substantiation from the record to support his assertions. Because the jury was made aware of the State's late disclosure of the impeachment material, Stuebe's unsupported speculation about prejudice from the delay lacks merit. *See State v. Tison*, 129 Ariz. 526, 535 (1981) ("Unless there are objective indications of jurors' prejudice, we will not presume its existence.").

## II.        Alleged Profile Evidence.

**¶13**        Stuebe further contends for the first time on appeal that testimony from law enforcement witnesses concerning the extent of burglaries and thefts at Zanjero Falls West constituted improper "copper thief" profile evidence.   "[P]rofile evidence suggests that a defendant possesses one or more behavioral characteristics typically displayed by persons" engaged in an illegal activity.  *State v. Escalante*, 245 Ariz. 135, 142, ¶ 22 (2018).  Profile evidence may not be used as substantive proof of guilt because of the risk that the defendant will be convicted based on the profile instead of the defendant's actions.  *Id.*  (citing *State v. Lee*, 191 Ariz. 542, 547, ¶ 26 (1998)).  We review this claim for fundamental, prejudicial error.  *Id.* at 138, ¶ 1.  To prevail on a claim of fundamental error, a defendant must first demonstrate trial error.  *Id.* at 142, ¶ 21.

**¶14**        At trial, several law enforcement officers testified that criminal activity, including burglary, was common at Zanjero Falls West.  The testimony also explained that the area was targeted because of the prevalence of valuable copper wire.  Stuebe first raised the topic during cross-examination of one patrol officer and never objected to similar questions of other witnesses posed by the State.

**¶15**        The testimony that Stuebe now challenges does not involve profile evidence.  The testimony explained why security measures such as the surveillance system were in place and why the police patrolled the area frequently.  The testimony also provided brief, background information for legitimate purposes such as why an officer had been at the property the day before, why an officer was patrolling the immediate area, and why law enforcement was familiar with the property.  *See Escalante*, 245 Ariz. at 142, ¶ 22; *Lee*, 191 Ariz. 545, ¶ 11 (collecting cases concerning permissible uses of drug-courier profile evidence).  The testimony did not offer substantive evidence of Stuebe's guilt or elicit "copper thief" traits.  *See Escalante*, 245 Ariz. at 142, ¶ 22; *Lee*, 191 Ariz. at 545, ¶ 11.  Thus, the superior court was not required to determine *sua sponte* that that testimony was improper profile evidence, and we find no error.

## III.        Prosecutorial Misconduct.

**¶16**        Stuebe argues for the first time on appeal that numerous alleged instances of prosecutorial misconduct denied him a fair trial.  We review his allegations for fundamental error.  *Escalante*, 245 Ariz. at 138, ¶ 1.  To show fundamental error based on prosecutorial misconduct, a defendant must first establish that misconduct occurred.  *State v. Edmisten*,

220 Ariz. 517, 524, ¶ 23 (App. 2009). To determine if a prosecutor's comment is improper, we look at the context and examine the entire record and totality of the circumstances. *See State v. Rutledge*, 205 Ariz. 7, 13, ¶ 33 (2003).

## A. Statements Allegedly Unsupported by the Evidence.

**¶17** Stuebe first claims that the prosecutor engaged in misconduct by making various assertions in his opening statement and closing argument that were not reasonably supported by the evidence. After examining each assertion, we conclude the evidence adequately supported the challenged remarks. *See State v. Goudeau*, 239 Ariz. 421, 465, ¶ 192 (2016); *see also State v. King*, 180 Ariz. 268, 276 (1994) ("The object of an opening statement is to apprise the jury of what the party expects to prove and prepare the jurors' minds for the evidence which is to be heard." (citation omitted)); *State v. Bible*, 175 Ariz. 549, 602 (1993) ("[D]uring closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions.").

**¶18** Furthermore, the superior court instructed the jurors that the lawyers' opening statements and arguments were not evidence; they were to determine the facts from the evidence produced in court; that evidence came from testimony and exhibits; they were not to be influenced by sympathy or prejudice; Stuebe was presumed innocent; and the State had to prove Stuebe was guilty beyond a reasonable doubt. We presume jurors follow the court's instructions. *State v. LeBlanc*, 186 Ariz. 437, 439 (1996). Therefore, even assuming *arguendo* that any of the prosecutor's individual comments were improper, the superior court's instructions "negated their effect," and no prejudice resulted. *See State v. Morris*, 215 Ariz. 324, 336-37, ¶ 55 (2007).

**¶19** Stuebe also suggests that the prosecutor committed misconduct after trial by making unsupported factual allegations in a sentencing memorandum regarding a prior burglary charge that had resulted in a misdemeanor conviction via plea agreement. In the sentencing memorandum, the prosecutor provided the court with the disposition information and stated that the burglary charge "was pled down to a criminal trespass misdemeanor." The superior court may consider any reliable relevant evidence or information submitted to it for sentencing. *See* A.R.S. § 13-702(C); *see also* Ariz. R. Crim. P. 26.7(b)(2). Moreover, because the superior court ultimately imposed the presumptive term, rather than the aggravated term sought by the State, Stuebe cannot establish any prejudice.

### B. Statements Allegedly Misstating the Law.

**¶20** Next, Stuebe contends that the prosecutor misstated the law during closing argument. The record shows that the prosecutor accurately represented the State's burden of proof in his argument. The prosecutor consistently affirmed that the State had the burden to prove the charges beyond a reasonable doubt. The prosecutor's brief statement that the State did not have to prove the charges "beyond all doubt" is consistent with the reasonable doubt jury instruction, which provides that "in criminal cases the law does not require proof that overcomes every doubt." *See State v. Glassel*, 211 Ariz. 33, 50, ¶ 58 & n.8 (2005) (reaffirming this reasonable doubt jury instruction).

**¶21** Stuebe further challenges two analogies that the prosecutor used to explain the burden of proof. The prosecutor used these analogies to describe how the State met its burden despite not removing "all doubt" and to rebut Stuebe's theories that the investigation was insufficient and flawed. The State again correctly emphasized its burden while discussing the analogies and accurately presented the standard of proof. Furthermore, the superior court's reasonable doubt instruction and its instruction that lawyers' arguments are not evidence negated any hypothetical error arising from the analogies. *See supra* ¶ 18.

### C. Statements Allegedly Misstating the Role of Jurors.

**¶22** Stuebe also argues that the prosecutor committed misconduct by asking the jurors to "pretend [they are] not restrained by restrictions of being in a courthouse and listening to rules" and to examine the evidence instead from a "common sense real person" perspective. To the extent that the prosecutor implied that jurors could disregard instructions or court rules, the request would be improper. We consider the context, however, to determine whether misconduct occurred. *See Rutledge*, 205 Ariz. at 13, ¶ 33. The prosecutor initiated the request by suggesting that the jurors "look at this case from a common sense real person point of view," which coincides with the court's jury instruction informing the jurors to use "the tests for truthfulness that people use in determining matters of importance in everyday life" and to "consider all of the evidence in light of reason, common sense, and experience." Considering the direct correlation with these instructions, the prosecutor's further invitation to "pretend," although awkwardly expressed, does not constitute misconduct. The superior court instructed the jury to find the facts from the evidence, to follow the instructions, and that lawyers' comments are not evidence. *See supra* ¶ 18. Presuming jurors follow instructions, we find no error. *See State v. Newell,*

212 Ariz. 389, 403, ¶ 68 (2006) (stating that a prosecutor's improper comments in closing argument did not affect a jury's verdict because the trial judge instructed the jury that statements during closing arguments were not evidence and jurors are presumed to follow the court's instructions).

### D. Statements Allegedly Impugning Defense Counsel.

**¶23** Stuebe further argues that the prosecutor impugned defense counsel's integrity by referring to Stuebe's examinations and argument as "distractions." The prosecutor described these "distractions" as including Stuebe's "questions about what the witnesses actually saw," "questions about fingerprints or DNA," and the *Brady* material. Contrary to Stuebe's claim, we perceive no *ad hominem* attack on the integrity of defense counsel. Stuebe raised concerns throughout trial about the sufficiency of the investigation and the credibility of the law enforcement witnesses. A prosecutor may present "fair rebuttal to an area opened by defense," *State v. Gillies*, 135 Ariz. 500, 510 (1983), and argue that the State's case was not contradicted, *State v. Byrd*, 109 Ariz. 10, 11 (1972). The record shows that the prosecutor's "distractions" comments permissibly criticized and rebutted Stuebe's theories without implying defense counsel acted in a dishonest manner by presenting them.

### E. Cumulative Effect.

**¶24** Finally, Stuebe argues that the cumulative effect of the alleged individual instances of prosecutorial misconduct denied him due process and a fair trial. Because we conclude no individual allegation constituted misconduct, we find no cumulative effect. *State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008) ("Absent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness.").

### IV. Imposition of Assessments.

**¶25** Stuebe contends for the first time on appeal that the superior court improperly imposed two assessment fees at sentencing without imposing an underlying fine. We review for fundamental, prejudicial error. *Escalante*, 245 Ariz. at 138, ¶ 1.

**¶26** At sentencing, the superior court imposed on count two the following fees: a $2 Victim Rights Enforcement Assessment and a $13 Criminal Penalty Assessment. These fees are mandatory assessments levied "on every fine, penalty and forfeiture." A.R.S. §§ 12-116.04(A) and -

116.09(A). However, the court erred by failing to also impose the mandatory probation assessment fine. *See* A.R.S. § 12-269(C). Because the State did not appeal the illegally lenient sentence, we lack jurisdiction to correct the error. *State v. Dawson*, 164 Ariz. 278, 285-86 (1990). Without any underlying fine, the court further erred in imposing the two assessment fees. *State v. Dustin*, 247 Ariz. 389, 391, ¶ 12 (App. 2019) (holding that the assessments require a predicate fine, penalty, or forfeiture). Therefore, we vacate the imposition of these assessments imposed on count two. *See State v. McDonagh*, 232 Ariz. 247, 248-49, ¶ 7 (App. 2013) (unauthorized fees create prejudicial fundamental error).

¶27 The superior court also ordered Stuebe to pay the costs associated with DNA testing. The State correctly identifies that this payment order was error. Consequently, we vacate the DNA testing fee imposed by the sentencing order under A.R.S. § 13-4037(A). *See State v. Reyes*, 232 Ariz. 468, 472, ¶ 11 (App. 2013) ("Because the legislature did not specifically state that a convicted felon has to pay a specific portion of the cost associated with his DNA testing in § 13-610, there is no basis for a court to order a convicted defendant to directly pay the testing fee.").

## CONCLUSION

¶28 For the foregoing reasons, and the reasons stated in the separate opinion, we affirm Stuebe's convictions and sentences but vacate the portion of the sentencing order requiring Stuebe to pay the costs of DNA testing and the assessment fees imposed on count two.



AMY M. WOOD • Clerk of the Court
FILED:    AA